BILLY J. WILLIAMS, OSB #901366
United States Attorney
District of Oregon
**AMY E. POTTER**
amy.potter@usdoj.gov
Assistant United States Attorney
405 E. 8th Street, Suite 2400
Eugene, Oregon  97401-2708
Telephone: (541) 465-6771
Attorneys for the United States

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## MEDFORD DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | 1:18-cv-01977-MA |
| Plaintiff, | |
| | **COMPLAINT** |
| v. | |
| **$200,080.00 U.S. Currency and $4,195.00 U.S. Currency** *in rem*, | |
| Defendants. | |

Plaintiff, United States of America, by Billy J. Williams, United States Attorney for the District of Oregon, and Amy E. Potter, Assistant United States Attorney, for its complaint *in rem* for forfeiture, alleges:

I.

This Court has subject matter jurisdiction, *in rem* jurisdiction, and venue pursuant to 21 U.S.C. § 881; 28 U.S.C. §§ 1345, 1355, 1356, and 1395; and 19 U.S.C. § 1610.

II.

Defendants, *in rem*, $200,080.00 U.S. Currency and $4,195.00 U.S. Currency, were seized in the District of Oregon, and are now and during the pendency of this action will be within the jurisdiction of this Court.

III.

Defendants, *in rem*, $200,080.00 U.S. Currency and $4,195.00 U.S. Currency, constitute moneys used or intended to be used to facilitate violations of 21 U.S.C. § 841(a)(1), and are forfeitable to the United States pursuant to the provisions of 21 U.S.C. § 881(a)(6), as more particularly set forth in the declaration of Joseph Lyons, Special Agent, Drug Enforcement Administration, marked as Exhibit A, attached and fully incorporated herein by this reference.

WHEREFORE, plaintiff, United States of America, prays that due process issue to enforce the forfeiture of defendants, *in rem*, $200,080.00 U.S. Currency and $4,195.00 U.S. Currency; that due notice be given to all interested persons to appear and show cause why forfeiture of these defendants, *in rem*, should not be decreed; that due proceedings be had thereon; that these defendants be forfeited to the United States; that the plaintiff United States of America be awarded its costs and disbursements incurred in this action.

DATED: **November 14, 2018.**            Respectfully submitted,

BILLY J. WILLIAMS
United States Attorney

*s/ Amy E. Potter*
**AMY E. POTTER**
Assistant United States Attorney

## VERIFICATION

I, Joseph Lyons, declare under penalty of perjury, pursuant to the provisions of 28 U.S.C. Section 1746, that I am a Special Agent with the Drug Enforcement Administration and that the foregoing Complaint *in rem* for Forfeiture is made on the basis of information officially furnished and upon the basis of such information the Complaint *in rem* for Forfeiture is true as I verily believe.

<u>s/ Joseph Lyons</u>
**JOSEPH LYONS**
Special Agent
Drug Enforcement Administration

## DECLARATION of JOSEPH LYONS

I, Joseph Lyons, do hereby declare:

### BACKGROUND/EXPERIENCE

1. I am a Special Agent (SA) with the Drug Enforcement Administration (DEA). As such, I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7) and empowered by law to conduct investigations and make arrests for offenses enumerated in 18 U.S.C. § 2516. I also am responsible for investigating drug-related crimes within the United States. Under 21 U.S.C. § 878, I am empowered to make arrests and obtain and execute search warrants.

2. I have been employed in the field of law enforcement since 2013. From 2013 to 2016, I worked as a Border Patrol Agent in Weslaco TX for the United States Border Patrol. My training at the Border Patrol Academy included the identification of controlled substances. During my employment with the Border Patrol, I made multiple seizures of marijuana. I was hired by the DEA in July 2016.

3. I completed the 17-week DEA Basic Agent Training program in Quantico, VA. The training focused on methods of unlawful drug trafficking; the identification of controlled substances; the means by which drug traffickers derive, launder, and conceal their profits from drug trafficking; the use of assets to facilitate unlawful drug trafficking activities; and the law permitting the forfeiture to the United States of assets purchased with drug proceeds or assets intended to be used to facilitate the drug violations. My specialized training has included, but is not limited to, the investigation of the manufacture, possession, and distribution of controlled substance listed within the Controlled Substance Act; executing search and arrest warrants

involving drug offenses; gathering drug and non-drug evidence; participating in undercover assignments; supervising and utilizing informants; investigating clandestine laboratories, smuggling, and money laundering; and monitoring drug-related conversations via Court authorized electronic eavesdropping.

4.  During my employment as a DEA Special Agent, I have participated in multiple investigations involving the above knowledge and skills. I know from my training and experience that controlled substance traffickers and their criminal associates use cash to hide illicit income from law enforcement and avoid paying taxes on that illicit income. I also know that because most banks and financial institutions do not accept the deposits of marijuana proceeds, many marijuana producers pay for labor and materials in cash.

## PURPOSE OF THIS DECLARATION

5.  This declaration is in support of a civil forfeiture complaint for $200,080.00 U.S. Currency seized on May 2, 2018 in Medford, OR from the luggage of Todd McDevitt and Troy Lewis and the seizure of $4,195.00 U.S. Currency seized from a safe in an outbuilding on 2581 Dick George Road, Cave Junction, OR ("Dick George Road"), which was searched based on a state search warrant on that same date. This declaration is based on a DEA investigation and information provided to me by the Medford Police Department (MPD) and does not include all of the facts known to me regarding this investigation, only those sufficient to establish probable cause to seize the above referenced assets. As discussed below, I believe there is probable cause to believe that the $200,080.00 and the $4,195.00 are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as they constitute moneys used or intended to be used to facilitate violations of 21 U.S.C. § 841(a)(1), specifically the manufacture and distribution of marijuana.

## SUMMARY OF THE INVESTIGATION

6. On April 12, 2018, Medford Police Detective Mark Cromwell received information from a law enforcement officer regarding an airplane bearing tail number N427AB that was traveling from John Wayne Airport in Santa Ana, California, to the Rogue-Valley International Medford Airport in Medford, Oregon. The law enforcement officer told Detective Cromwell that the airplane was likely transporting bulk U.S. Currency for delivery in Medford, Oregon. The law enforcement officer told Detective Cromwell that the pilot of the plane was Todd McDevitt.

7. On April 12, 2018, investigators from the Medford Area Drug and Gang Enforcement Task Force (MADGE) and the Medford DEA Resident Office began a surveillance operation at the Rogue Valley International Airport in Medford, OR. At approximately 9:50 a.m., the airplane bearing the tail number N427AB arrived at the Rogue Valley International Airport and taxied to Million Air, a fixed-based operator at the airport. Medford Police Detective Mark Cromwell observed the pilot, later identified as Todd McDevitt, and a passenger exit the plane and enter the Million Air building. McDevitt had a medium-sized suitcase and the passenger had no luggage. McDevitt then walked to the parking lot of Million Air and gave the suitcase to the driver of a black Hummer H3 bearing Oregon license plate 850HVJ, registered to Troy Lewis at Dick George Road. McDevitt and the passenger then returned to the plane they had arrived in without luggage and the plane departed. MADGE investigators followed the black H3 to Dick George Road and observed that the address was a large farm. There was construction going on that appeared to be turning the farm into a commercial marijuana growing operation.

8. On April 17, 2018, MADGE investigators ran a check through the Oregon Liquor Control Commission (OLCC) and found that Dick George Road was in the application process with the OLCC to be registered as a recreational marijuana producer. MNG Holdings LLC, SJT Agriculture LLC, Grizzly Agriculture LLC, and Tie Die Farms LLC were all listed on the application associated with the property. The MNG Holdings application showed Michael Ng, Patrick Martin, and Joseph Martin as each controlling at least 10% of the LLC.

9. On April 18, 2018, MADGE investigators began a similar surveillance operation. The plane bearing tail number N427AB landed at the MFR Airport and Todd McDevitt, who had one suitcase, and a passenger, who had no luggage, walked from the plane to the Million Air terminal. McDevitt then walked to a black Toyota Tacoma in the parking lot, bearing Oregon license plates 562DKU, registered to Troy Lewis at Dick George Road. McDevitt gave the suitcase he was pulling to the driver of the Toyota Tacoma and the driver of the Toyota Tacoma gave McDevitt three other suitcases. MADGE investigators then attempted to follow the Toyota Tacoma but lost sight of the vehicle. Several hours later, Detective Nick Neville and Detective Jarod Pomeroy observed the black Toyota Tacoma bearing the same license plate parked at Dick George Road.

10. On May 2, 2018, Detectives observed as Troy Lewis arrived at the Million Air parking lot in a black Hummer H3, OR license plate 850HVJ. At approximately 10:32 a.m., Todd McDevitt and a passenger named Pierre Rouleau arrived at the Million Air airport in an aircraft bearing tail number N427AB. McDevitt again exited the aircraft with a suitcase. Rouleau entered a restroom at Million Air as McDevitt met with Lewis in the parking lot and gave his suitcase to Lewis.

11. After the suitcase was exchanged, investigators made contact with all three individuals. Lewis was found to be carrying a pistol in his waistband. MADGE Detective Mark Cromwell asked Lewis and McDevitt what was in the suitcase and they both told Detective Cromwell that the suitcase contained U.S. Currency. Both Troy Lewis and Todd McDevitt signed consent forms to search the suitcase.

12. Detective Cromwell opened the suitcase and found multiple bundles of $20 bills banded together in $2,000 bundles. Medford Police Officer Robert Havice later deployed his K-9 "Narc" on the suitcase and Narc gave a positive alert to a drug odor that Narc is trained to detect. Narc is a certified drug detection dog who is trained on four drug odors (methamphetamine, marijuana, cocaine, and heroin). The currency was later counted and determined to be $200,080.00. At this point, MADGE detectives seized the U.S. Currency. MADGE detectives and DEA agents then interviewed Lewis, McDevitt, and Rouleau, but none of them were placed under arrest.

13. During his interview, Lewis stated that he is employed as a security officer for a marijuana growing operation at Dick George Road. Lewis stated that he works for Michael Ng. Lewis stated that he previously worked as a security officer for marijuana dispensaries in Southern California and that Michael Ng was a part owner of these dispensaries as well. Lewis stated that part of his job was to pick up suitcases full of U.S. Currency from the airport and transport the U.S. Currency back to Dick George Road where he turned the U.S. Currency over to a man named Solomon Fishman. Lewis stated that the cash was being used for payroll and other expenses at the marijuana growing operation at Dick George Road.

14. Lewis acknowledged that he had picked up suitcases containing U.S. Currency twice before from Todd McDevitt and had transported these suitcases to Dick George Road. Lewis stated that the three suitcases he gave to McDevitt on April 18, 2018, were empty.

15. During his interview, Todd McDevitt stated that he was transporting U.S. Currency in his suitcase at the direction of a man named Mark Samonian. McDevitt stated that Samonian is the operations manager for a medical marijuana dispensary in Santa Anna CA. McDevitt stated that he is paid $4,000.00 per month to fly currency to Oregon and to fly people associated with Samonian to various locations. McDevitt stated that he did not fly drugs in the plane.

16. McDevitt stated that Mark Samonian had given the suitcase to him the day before at McDevitt's home in Southern California and instructed McDevitt to fly to the MFR Airport and give the suitcase to Troy Lewis. McDevitt said he had transported U.S. Currency in this way to Southern Oregon approximately six times.

17. During his interview, Pierre Rouleau, the plane passenger, stated that he was unaware of what was in the suitcase that McDevitt was transporting. Rouleau stated that he is an owner of a company named Green Light Holdings, Inc. which provides payroll services for some marijuana dispensaries in California and other businesses. Rouleau stated that he accepts cash from dispensary clients, deposits the cash into Green Holdings, Inc., and then cuts payroll checks for the dispensary owners. When Detective Cromwell asked Rouleau for consent to search Rouleau's phone, Rouleau asked for an attorney and the interview ended.

18. MADGE detectives, Oregon State Police Detectives, DEA agents, and members of the Rogue Area Drug Enforcement team (RADE), then served a state search warrant on the property at Dick George Road the same day. The search warrant was authorized in order to search for evidence of the crimes of Import/Export Marijuana (ORS 475B.227) and Money

Laundering (ORS 164.170). During the service of the warrant, investigators found several large wooden fenced areas surrounding fields of dirt that appeared to be intended to be used for growing plants. The wooden fenced areas had mounted security cameras pointed towards the fields of dirt. Investigators also found large pole barns, multiple greenhouses, and plastic water tanks on the property. Some of the wooden fences and barns had already been built, and some were under construction. Investigators found a dump truck on the property as well as a tractor with a disk attachment for tilling soil. A white sign on one of the fenced areas read "No on-site consumption of marijuana" in English and Spanish. Inside the various structures on the property, investigators found over thirty firearms, ammunition for the firearms, night vision goggles, and ballistic panels. Inside the security building, investigators found a Kodiak safe which contained $4,195.00 U.S. Currency as well as several of the firearms. MADGE detectives seized the U.S. Currency. In addition, investigators found bags of potassium nitrate and potassium phosphate, a money counter, money bands for stacks of $2,000.00 and $10,000.00, an OLCC worker permit for Troy Lewis, industrial-sized fans, and a security system.

19.  Due to my training and experience, I know that marijuana producers will often hire security guards and install security systems in order to protect their facilities and product from thieves. I also know that marijuana grows use greenhouses, industrial-sized fans, potassium phosphate, and potassium nitrate in order to grow marijuana. I also know that many marijuana growers use tall wooden fences to prevent the marijuana plants from being seen by outsiders. Marijuana growers often point security cameras at their fields of marijuana to prevent theft. I also know that marijuana grows often use U.S. Currency to pay their employees since federal banks do not allow marijuana proceeds to the deposited and that the presence of money bands

and money counters are consistent with this activity. Based on my training and experience, this address was built with the intention to grow marijuana.

20. Investigators did not find marijuana plants on the property. Based on my training and experience, I know that marijuana is usually planted in outdoor grows after the last frost of the year to ensure that the young plants do not die. In Southern Oregon, this usually happens sometime between late-Spring and early-Summer. Because the search warrant was served on May 2, it is not surprising that there were no marijuana plants located on the property. The presence of the tractor with the disk attached and the partially tilled fields indicates the grow was in the process of soil preparation prior to planting.

21. Detectives detained and interviewed James Rillo, Shawn Murphy, William Stafford, Daniel Dabrowski, Paul Kriewall, Thomas Marlow, Palanii Arturo Huey, and Eva Montenegro. All these subjects were working at the location in different capacities and were on the property during the service of the warrant.

22. During his interview, James Rillo stated that he worked for Jefferson Communication and was installing security cameras at the property for the marijuana grow. Rillo had no knowledge of the management structure at the farm.

23. During his interview, Shawn Murphy stated that he was a neighbor of the property and lived on a nearby ranch. Murphy stated that he had been hired to disk the fields inside the wooden fences with his commercial tractor which was on the property. Murphy was not employed by the operation in any other capacity.

24. During his interview, William Stafford stated that he had worked on the property since October 2017, doing general labor. Stafford stated that marijuana had been transported off

the property in 2017 by an individual known to him only as "Will." Stafford stated that Will was from a different state but did not know where Will was from.

25. During his interview, Daniel Dabrowski stated that he had worked on the property since October 2017. Dabrowski said that he worked as a security officer and his supervisor was Troy Lewis. Dabrowski stated that there was a large marijuana grow on the property in 2017. Dabrowski stated that an individual named "Will" left the property shortly before December 19, 2017 with a truck pulling a trailer and that the trailer was loaded with blue barrels containing approximately 30-40 pounds of marijuana each. Dabrowski said that he was offered to escort Will as a security guard for the marijuana and that Dabrowski had been told that the marijuana was going to California. Dabrowski stated that he declined to do this because he would have made less money if he took this job.

26. During his interview, Paul Kriewall stated that he had worked on the property for approximately one year as a marijuana farmer. Kriewall said that marijuana had been grown on the property during the previous season. Detective Cromwell asked Kriewall whether the amount of marijuana grown on the property was equal to approximately five-hundred pounds of marijuana. Kriewall estimated that more than five-hundred pounds had been grown. Kriewall stated that there was not an extraction lab on the property, but that he had seen the marijuana placed into vacuum sealed bags.

27. During his interview, Thomas Marlowe stated that he was working as a security officer on the property. Marlowe stated that marijuana had been grown on the property the year before and had been transported off the property by an individual named "Will." Marlowe stated that he did not know the destination of the marijuana. Marlowe stated that he believed the

owners of the property were in the process of obtaining OLCC licenses in order to grow marijuana within the Oregon State guidelines.

28. During his interview, Arthur Palanii stated he had been living on and employed on the property for approximately nine months after obtaining the job off of Craigslist. Palanii stated that the property had a large marijuana growing operation in 2017. Palanii stated that the marijuana had been placed in barrels and transported off the property but that Palanii did not know the destination of the marijuana.

29. During her interview, Eva Montenegro stated she was in charge of distributing the U.S. Currency to the employees at the property. Montenegro stated that she didn't really have a supervisor on the property but that Paul Kriewell was "kind of" her boss. Montenegro said that there was no accounting system for keeping track of hours but that she trusted each employee to tell her how much they had worked every week. Montenegro said that she would take the U.S. Currency from a safe in the house and that this safe was replenished with cash every week. Montenegro said that she was unaware how the safe was replenished.

30. On August 13, 2018, DEA Special Agent Clark Wheeler and I drove past Dick George Road to observe the property. I was able to see inside the wooden fences on the property and observed that the fences contained fields of marijuana plants.

## CONCLUSION

31. Based on the foregoing and my training and investigative experience, I have probable cause to believe that the $200,080.00 U.S. Currency and the $4,195.00 U.S. Currency are subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6), as they constitute moneys used or intended to be

used to facilitate violations of 21 U.S.C. § 841(a)(1), specifically manufacture and distribution of marijuana.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. §1746.

Executed this 13th day of November 2018.

*s/ Joseph Lyons*
Joseph Lyons
Special Agent
Drug Enforcement Administration

℅JS 44   (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

**DEFENDANTS**

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

## II. BASIS OF JURISDICTION   (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)    and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT   (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability |  | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
|  |  | ☐ 371 Truth in Lending | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury |  | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability |  |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise |  |  |  | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment |  | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | **Habeas Corpus:** |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land |  | ☐ 530 General |  |  |  |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application |  |  |
|  | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee |  | ☐ 950 Constitutionality of State Statutes |
|  |  | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions |  |  |
|  | ☐ 440 Other Civil Rights |  |  |  |  |

## V. ORIGIN   (Place an "X" in One Box Only)

- ☐ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from another district (specify)
- ☐ 6  Multidistrict Litigation
- ☐ 7  Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing  (**Do not cite jurisdictional statutes unless diversity**):

Brief description of cause:

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER F.R.C.P. 23

**DEMAND $**

CHECK YES only if demanded in complaint:
**JURY DEMAND:** ☐ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):   JUDGE _____   DOCKET NUMBER _____

DATE _____   SIGNATURE OF ATTORNEY OF RECORD _____

**FOR OFFICE USE ONLY**

RECEIPT #   AMOUNT   APPLYING IFP   JUDGE   MAG. JUDGE